Case number 13-3934, Warren Hennis v. Margaret Bagley. Order of argument is not to exceed 30 minutes per side. Ms. Felker for the appellant. Your Honor, I'd like 5 minutes for rebuttal please. You may. Thank you. May it please the Court, Mr. Hennis respectfully requests that this Court grant, reverse the District Court's ruling on the 60B motion in remand with directions to order 60B relief. The District Court abused its discretion in deciding that Mr. Hennis did not show ineffective assistance of post-conviction counsel and that he did not show extraordinary circumstances. What do we do about McGuire? That seems like a really tough case. Yes, Your Honor. This case is unlike McGuire in three ways. The first is that McGuire did not have a substantial ineffective assistance of counsel claim. The second is the merits of Mr. McGuire's ineffective assistance of counsel claim were heard in the State Court. In fact, this Court had said that the Ohio Supreme Court had thoroughly reviewed Mr. McGuire's ineffective assistance of counsel claim. Third, Mr. McGuire... I heard an if there that I didn't hear the then. Tell me again. It sounded like you said if the State Courts had heard something. No, the State Court had heard. I apologize. The State Court had heard Mr. McGuire's ineffective assistance of counsel claim and thoroughly reviewed it according to the decision in McGuire. And finally, in McGuire, this Court found that Trevino did not directly apply. In fact, it used the word weakly applied. Here, Trevino is directly on point. I would have said the thing that comes out of McGuire, which was a pretty well-established principle before McGuire, was that changes in law do not a Rule 60b-6 motion make. And that that's... So I don't know why those three differentiations between this case and McGuire help you if that's the key obstacle. I respectfully disagree that that's the key obstacle. With the McGuire case, those were three important factors that the Court decided. But also, with the change in law, the rule is that only a change in law may not become an extraordinary circumstance. Here, there's more than just the change in law issue. That's a triggering event. That's certainly what has occurred to enable Mr. Hennis to bring his claim now. But that is not the only extraordinary circumstance here. So your view is the way this works is change in law always works as long as it's combined with something else? Not always works, but change in law may work if it's combined with other extraordinary circumstances. So what is your other extraordinary circumstance here, then? Here, the ineffective assistance of counsel claim is substantial. The merits of that claim has never been heard before. The case fits directly within the Martinez-Trevino Rule. Well, aren't you sort of trying to get two bites out of Martinez? Martinez is what always lets you get there, under your theory, but you've already used that one. So you're saying it's because it's a substantial claim, but you would think that extraordinary means more than having a substantial claim, because ordinarily people bring claims that are sometimes substantial. Many courts have evaluated Rule 60B motions and evaluated on several factors. The Phelps test is the one we cite, but those tests have been derived from the Eleventh Circuit Ritter case and the Gonzales case, the Supreme Court case, also refers to certain factors. So the substantialness of the underlying claim is one of those factors, or the merits of the underlying claim. It's an important one. Because if you didn't have that, it certainly wouldn't be extraordinary, but you would think you would need something somewhat more than that, wouldn't you? Yes, and in addition, although, Your Honor, the second bite at the apple with the Martinez-Trevino, in the Phelps case and in other cases, the closeness of the change in law applicability, including in McGuire, was a factor. Now, there are also other factors, too. Closeness in the sense that, what, that you brought the claim shortly after the change in law? Is that what you mean? The timing is a factor, but also how well this fits under the Trevino exception. In McGuire, it was weighed heavily in the decision that the case did not fit well under Trevino, and that was a factor against awarding relief in that case. But also here... You're doubling up the merits and the portal of getting to the claim, that you can get to the claim as long as the claim would win. That's what I hear you saying, which is not much of a... I mean, that's just chasing the tail. Well, under the Rule 60B rubrics that other courts have used, such as the Phelps, Ritter, Gonzalez, those have all said you have to look at the merits of the underlying claim to tell whether this is an extraordinary circumstance. What's the most egregious act that counsel did that they shouldn't have or they failed to do? The most egregious act is the fact that the primary counsel decided that investigation was not necessary. He thought his client was going to plead guilty, but he turned it down, right? He wanted his client to plead guilty. There's no indication that his client ever indicated he would, but there's also... I thought there was some indication that the ineffectiveness was that the counsel had created this toxic relationship, so that's why the client didn't take his advice. Am I misreading that? Because I thought there was a lot of talk about toxic relationship. That is part of the egregious nature of this ineffective assistance of counsel. The counsel here, as Judge Seiler mentioned, was depending on the fact this was ended at plea, and we point out the fact that it created a toxic relationship by not investigating and, in fact, ruined the chances of a plea by going with this strategy. Well, but when you say ruined the chances, you mean ruined the chances of the client taking a good deal. Or trusting his counsel, and when his counsel says, I recommend this, the client says, well, you didn't investigate, you didn't do any of the things that counsel should do, so why should I trust you? The underlying, I take it, the underlying argument now is not that if everything had been done right, he would have taken the plea and spared the death penalty. The claim now is he didn't do it, right? And, therefore, if they had done all this investigation, they would have been able to convince the jury not to say that he did it. The claim now is the same that it was at the time of the petition, which is that counsel was ineffective for failing to investigate, and counsel was ineffective for failing to investigate, which would have produced evidence that the primary witness had violent temper, was known to have issues with the law, but she was also... This is Tabitha, right? Tabitha Hennis, correct. And so maybe Mr. Hennis, with this evidence presented, would have been found not guilty, or maybe he would have been found guilty of her lesser included offense, too. Those are all possibilities. Did nothing come out of trial that Tabitha was not spotless? It certainly came out of trial that she was a crack addict, but it didn't come out of trial that she was violent, that she was the one who brought drugs into the family rather than, as the prosecution tried to paint it, as Mr. Hennis leading the way in this life of criminality. So it was much more from the evidence we've been able to uncover that there was witnesses who would have said, no, Tabitha was, in other words, the brains behind the operation here. She was the violent one. She was the one who controlled everything with the serious drug problem. How would that have countered this fact that the deceased was tied up and shot in the head? It's kind of execution style and all. Is somebody going to testify that Tabitha was the kind to tie up people and shoot them in the head and all? Things like this. Well, that she was a violent person. That she shot other people? Tied them up? Nobody testified that Mr. Hennis had shot other people, either. The point there also would have been that it appeared that he was tied up after the crime. The victim was tied up after the crime. That's a little bit far-fetched, isn't it? That you would shoot a person in the back of the head and then tie them up, dog time, and leave them there? Well, according to the... I know that's what your expert says, but that sounds phenomenal to me. Except if you examine the layout of the water treatment plant, there are wells there that was likely an easy disposal for the body. The body would have gone into the water, the sewage, and possibly disappeared. One of the ways to move a body is to tie it up. So that's a reason for that to happen. Say that again, it's a way to move the body when you tie the body up? Yeah, it's attempting... That's one theory, is attempting to tie up the body in order to move it into these wells. Did your expert say that? I'm not sure if the expert said that in his affidavit. Speculation. Correct. Furthermore, there was an... As the fourth extraordinary circumstance, this was an egregious example of post-conviction counsel ineffectiveness. It doesn't get much worse than never telling your client you're filing a post-conviction petition on his behalf. And that's exactly what occurred in this case. And then the fifth reason that this is an extraordinary case is because Mr. Hennis is facing the death penalty. The bedrock principle of our adversarial system is to have Sixth Amendment trial counsel and to have effective trial counsel. He's never gotten a chance to have his claim of ineffective assistance of counsel heard, and yet he's going to be executed. This is an irreversible action and it outweighs any state claim of finality. What were the names of the constitutionally ineffective lawyers? David Boddicker and Joe Edwards were the trial counsel. David Boddicker, the head of... He was head of the whole operation. Allegedly the best lawyer in the state on this side. He was... After this case, he was made the head of Ohio Public Defender. That's correct. But that... That's even more hurtful. That doesn't... Elevated. That doesn't mean that he did a good job in this case. Now, I can't speak for his other cases, but it's clear that he refused to investigate. I don't know anyone who ever thought of him as anything but incredibly zealous in death penalty cases. Again, that... You would agree, wouldn't you? Actually, I would not. I'm sorry, but I don't want to step on his reputation. I just want to pay attention to what he did here, and what he did here was not acceptable. But now your client testified not under oath, but he was able to tell the jury's story. Did he tell them that Tabitha put him up to it, or Tabitha shot this man, or anything like that? He gave a couple of different statements to the police. What did he say to the jury? And then he gave an unsworn statement to the jury. Did he say Tabitha did it, or Tabitha had the gun? He did not. What did he say in that statement? He gave an unsworn statement about being at the water treatment plant, but the Cuban gang, which Tabitha was involved in, conducting the murder. Again, he gave... He rested on his Fifth Amendment right not to tell exactly what happened, and he gave differing accounts. But the evidence that could have been presented against Tabitha could have shown that she was just as incriminated as he was. Wouldn't it have required him to at least kind of finger her at some point? But he never did, did he? I don't understand that. Well, he would never be required to give up his Fifth Amendment right not to. I know that, but if you're there at the scene of the crime and you think your wife did it, I'd think that he'd at least say that, wouldn't he? Isn't that logical? Yes, that's logical, but that doesn't take away the fact that the trial counsel had an obligation to investigate what occurred. Even if Hennis had confessed to his trial counsel under Ronpelia v. Beard, they still have an obligation to investigate the case fully. But you have to show prejudice too, don't you? Yes. And here the prejudice was that clearly Tabitha Hennis was equally as inculpated as Mr. Hennis. Let me ask you about that because we sort of first say if you'd investigated, you could have impeached her at trial in the sense of impeaching as to her, the accuracy of her testimony and so on. But to implicate her at trial, I would think you would need more than that in the sense, as Judge Seiler was indicating, that his story, as he did tell to the jury, was he was there. And just to say that she was violent in other times or that she was a crack addict before he was, does that get you implicating her as opposed to simply maybe getting the jury to say, well, we don't believe anything she says because she's just such a low life? Well, the latter is what we're after. So I apologize, but the latter is what we're after is that she was the key witness and bringing out the facts that she was not a scared wife as the state tried to demonstrate she was. She was the one that actually Mr. Hennis was following, and Mr. Hennis was not controlling her, but she was controlling him. That goes much more to her credibility that could have been before the jury and shown that her testimony should have been disbelieved. So secondly, other than the extraordinary circumstances, is the fact that the post-conviction counsel was ineffective. And post-conviction counsel was ineffective because, again, failed to ever communicate with Mr. Hennis that he was, in fact, handling the post-conviction case, even though Mr. Hennis had written him letters and, in fact, finally threw up his hands and wrote the court and asked for post-conviction counsel to be appointed, not knowing that, of course, his post-conviction counsel had already filed his post-conviction petition. Are these claims of ineffective assistance of counsel the same ones that were raised in the 2254 claim previously? Well, the claims of ineffective assistance of trial counsel, yes, but ineffective assistance of post-conviction counsel was not raised in the original petition because it could not have been under Coleman. It was rarely foreclosed under Coleman, and, in fact, the district court said, I will summarily reject any claim that post-conviction counsel was ineffective. So that is new, that post-conviction counsel ineffectiveness. But it wasn't raised in the state courts. It wasn't raised in the state courts, again, because there's no form of relief for... How would this all work in terms of a pinholster? So is your theory, well, if you have a tribunal, maybe a tribunal or Martinez says this, if you can get through that window, you can overcome the pinholster problem that a federal court can't grant relief based on evidence that wasn't in front of the state court? Well, pinholster is only an issue if the state court had decided the ineffective assistance of counsel claim on the merits, and here it was procedurally defaulted. So pinholster doesn't apply. But doesn't it still stand for the proposition federal courts can't be granting relief based on evidence that wasn't in front of the state courts? Am I wrong about that? Again, only if the claim was decided on the merits. For claims that were procedurally... So just tell me the name of the case, the Supreme Court case that clarifies that line. Or you're just being descriptive as to pinholster? As to pinholster. But is there a case that subsequently says the pinholster rule, the rule I'm talking about, only applies in the setting where the state court reviews it on the merits? There might be, and I'm happy to submit that as a supplement. Here the post-conviction counsel not only didn't talk to Mr. Hennis, but he didn't bother to investigate otherwise, not only talking to his client, but investigating by doing the things a normal post-conviction counsel would be expected to do. He didn't collect all of the files from trial counsel, or he didn't talk to previous counsel in detail, although he did talk to Mr. Boddicker occasionally. He never talked to Mr. Edwards. He also never even got an affidavit from Mr. Hennis to support the post-conviction claims. And in Ohio, the post-conviction claims have to be supported by evidence outside the record. So failing to do just this basic step got this petition summarily rejected. What's your theory of why the lawyers did what they did? Do you think it was one lawyer thinking the other was doing something? Personality conflicts with the client, laziness. I mean, what do you think happened? What's your theory of what happened? My theory is that Mr. Boddicker was a powerful man who had a way of knowing without investigating. He had his own determination that is against what effective counsel should do, but he had a way of deciding, I don't want to invest a lot of time in this case. I want to plead it out. And that's what he decided he wanted to do in this case. For what reason, I don't know. But according to Mr. Edwards, Mr. Edwards was trying to get him to work on the case, trying to get him involved, trying to get him investigating, and Mr. Boddicker kept saying no. No, you're going to ruin a plea agreement. No, don't get involved. No, don't investigate. So I can't tell you what was in Mr. Boddicker's head. I can only tell you that that's the information we have received from Mr. Edwards. And that was consistent with what Mr. Grafe, who calls himself a good friend of Mr. Boddicker, had said was typical of Mr. Boddicker's mentality with investigation. He did not like to do them. So the district court had abused its discretion in finding that the ineffective assistance of post-conviction counsel was not valid. The state had never raised any arguments to attack the facts that we put forth. It was uncontested, yet the district court speculated as to why the affidavit that was uncontested would be wrong. However, it was clear from the affidavit, the state never contested the fact that Mr. Grafe was deficient counsel. Now, this ultimately prejudiced Mr. Hennis because as a result of this ineffective post-conviction counsel, he was not able to bring his claim of ineffective assistance of trial counsel for failure to investigate. The failure to hire an investigator, the failure to investigate Tabitha's background and impeach her as a witness, and the failure to investigate the crime scene bloodstain evidence, which would have shown that possibly there was no premeditation, but rather that the victim was tied up and thrown into a well or to be thrown into a well. So the extraordinary circumstances that are here are, again, different than the review of the case of McGuire, where Trevino's claim at best applied weakly. McGuire's IAC claim was thoughtfully considered by the Ohio Supreme Court. Here, no one considered his claim. What kind of relief would you have the district court conduct all this hearing or send it back to the state court to go back through post-conviction? Well, other courts have decided this, have remanded the cases back for cause and prejudice, to determine cause and prejudice. And then whether the district court decides that the issue of Martinez, ineffective assistance of post-conviction counsel, has to be exhausted is one that courts have differed on. So some courts have said, yes, we'll stay proceedings in the district court while you exhaust the ineffective assistance of post-conviction counsel underlying the Martinez issue. So that is a possibility. But the important part is that it would continue his claim and it would allow the opportunity for cause and prejudice to be proven. So from following that, you're saying it goes back to federal district court. It decides cause and prejudice initially. If it says there's enough for that, you're saying some courts then give it back to the state courts to exhaust the claim? Before it decides cause and prejudice. Because cause under Martinez is ineffective assistance of post-conviction counsel. It establishes cause. Would the state court ruling be given at the deference at that point, after the state court rules on that? If the state court rules on the merits of that claim, it's possible. Including the ineffective assistance point, right? Ineffective assistance of post-conviction counsel. Exactly. I believe so. At the deference. I believe so. So the whole thing becomes just another new exhaustion point. Well, I guess it's a new claim, so you would newly exhaust it. Again, it's not like the Supreme Court has decided this, so it's still an open question, but that is how some courts have handled it. The one thing for you to think about in rebuttal, which I'm just still struggling with, it seems like your extraordinary circumstances just keep coming, they keep piggybacking on the underlying merits. That's what I'm really struggling with. I say to myself, the normal rule is a change in law is not a reason for 60 v. 6. I start with that. I realize in McGuire they say there's this extraordinary circumstance, exception to the extraordinary circumstance, exception that already exists. But when you start telling me reasons to do that, they seem to be things that go back to the merits of the claim. That just seems odd to me. I mean, I could see someone saying, oh, actual innocence would be the thing. So if you have a change in law, normally that doesn't work, but if you have a cognizable actual innocence claim, that I would understand. But your definitions of extraordinary circumstance seem to go back to the merits of how you would do under the change in law. That just seems very odd to me to say, oh, normally we don't let you bring up a new claim because there's been a change in law, exception if you have a good claim under the change in law. That's not really a—do you understand what I'm saying? Yes, I do. That's not much of a theory. I don't quite understand. That just begs the question. You always get it if it's a good theory. You never get it if it's a bad theory. Well, who cares? That's not doing anything. So that's the thing I'm not quite understanding. And I'll wait until rebuttal to answer that. Great. Thank you. Thank you, counsel. You'll have your five minutes for rebuttal. Please. Please, the Court. My name is Seth Kessler on behalf of the Warden. The issue from the Court today really is did the District Court abuse its discretion in denying the Rule 60b motion? For several reasons, the Warden believes that the District Court didn't, and the first is what Judge Sutton has brought up, that change in decisional law does not constitute extraordinary circumstances. The Court was well within—certainly didn't abuse its discretion when it put that down as one of its holdings. The second is that the District Court made an actual review of the ineffective assistance of post-conviction counsel's conduct. This thing you just said, I mean, it does restate McGuire, but McGuire has this line. Oh, jeez, what is it? Page 750. Trevino does not, however, require a different result because intervening law— so it says the thing that's helpful to you— because intervening law does not generally permit the reopening of finally decided cases, comma, and even if it does in some truly extraordinary cases, this is not such a case. So, you know, even McGuire, your key case, says that there is—that's the rule, but the rule has exceptions, and that's the whole debate here. They're saying there's something extraordinary about this. Right, and that was going to be my second point because the District Court, in his decision, actually reviewed the claim, the merits of this post-conviction ineffective assistance claim, and really found that the post-conviction counsel's conduct was not sufficient. So he looked into what the substantial or extraordinary, you know, substantial claims they were making along, you know, to go towards that exception, and he found that the conduct of them was not deficient, that he reviewed the—filed a petition with 24 claims, that he pushed for an evidentiary hearing and for discovery, that claims that he raised were meritorious, and he could not come up with a finding under Strickland that Richard Hennis was— or Warren Hennis was prejudiced by the conduct, by his post-conviction counsel's conduct. The other point that we make in our brief that I just want to briefly address on is that fact that, as the District Court found, these are new claims from what was presented in the amended habeas petition. And because it's new claims based on new factual predicates, Warren would assert that the District Court wouldn't have had jurisdiction under the successive petition rules to rule on the motion in the first place. It would have had to come to this court, and this court would have had to decide whether or not a successive petition application was warranted. Unless the court has any further questions. Well, let me ask you this. One of the claims of ineffectiveness is not having examined this blood that was under a locker, and they seem to say that, well, maybe if the blood was his own blood, was Hennis' own blood, that would in some way have supported his theory. In Rennie's affidavit, he refers to a police informational summary number 38 of DNA testing results. Do you know what that's about? Is that stuff that was done long after, or what was that? My understanding is that that was done after. I do know that the Rennie report was brought in during the federal habeas proceedings. Judge Magistrate Merz, when he was reviewing it, talked about the affidavit, saying that it's not even known whether they would have had access to that information or whether those findings would have been admissible at all in court because it didn't meet the documents. I understand he largely said and particularly wouldn't have known what Rennie would have said 10 years earlier, but I'm just asking because this Exhibit B lists these as, quote, police informational summaries, which makes it sound as though it was something in police files, not just in Rennie's own creation. Do you have any information on that? Unfortunately, I don't. Okay, maybe your adversary will. Do my colleagues have anything else they want to ask? Your adversary says that they couldn't have raised some of these claims because of the Coleman case there. How do you answer that because you're saying they're second and successive here? As far as, I'm not sure I understand the question you're asking. Well, I was asking her whether these are the same claims that were raised previously, and she said they couldn't have been raised previously, I thought, because of the decision in Coleman, which was overturned in part, at least, by the Martinez and Trevino cases. Are you talking about the post-conviction counsel claims? Well, ineffective assistance, I think there's several of them here. Right, there's the ineffective assistance of post-conviction counsel, which is what the motion in front of the district court primarily focused on. Also, they use as their substantial or extraordinary causes the ineffective assistance of trial counsel claim. So Coleman says that ineffective assistance of post-conviction counsel, there is no such thing, right? It's only ineffective assistance of trial and appellate direct appeal counsel. So that's partially overruled in Martinez, which is why these claims could not have been brought in state court. So that's what Judge Seiler is asking you. They didn't try to raise these claims in state court because Coleman would have said, no, you can't do this. So what's your answer to that point? Well, the ineffective assistance of post-conviction… Yeah, I didn't help any, sorry. I was trying to help. I made it worse. My fault. You should have an answer. Do you have an answer, or is the answer he's wrong? I don't have an answer. The ineffective assistance of the post-conviction counsel claim, should they have raised it and let the district court turn them down, or did she indicate the district court in some fashion said it wouldn't consider those things? Was that put on the record or anything of that nature? I think it should have been raised in front of the district court. Anything else? Okay, thank you. You have five minutes for rebuttal. To answer Judge Boggs' question about the informational summary number 38 first quickly, that's a police investigation report, so that was at the time of investigation, if that answers. And do we know what it says? I mean, obviously, apparently it was available to Mr. Reaney because he says he looked at it. Do we know what that DNA analysis said? None of the DNA analysis came back with any implications, whether it's Mr. Hennis or anybody else. So how can that have been prejudicial or ineffective if, had they looked at it the way the police had, they would get the same zero information? I mean, if I read the brief, your theory was if they had tested the blood, and if the blood had turned out to be Mr. Hennis's, then it might have indicated that he was a victim, not a perpetrator, although, of course, you can bleed while perpetrating. But even giving you that, it looked to me like somebody did test it, and now you're saying it didn't show anything. Oh, I'm sorry. That was not submitted for testing. So it didn't come back with implicating anybody, but it was not submitted for DNA testing. I think that's referring to the car. All I know is that's why I asked you. It says DNA testing results. Yeah, from what I understand, that was of the car. Okay, so you think it's DNA testing of something else. Yes. The police went to the trouble of testing the car, but not the blood in the water plant? They did not go to the trouble of testing the car. And so that's what I believe that's referring to. It says results. I mean, you may be right, but when something says results, that implies that there was testing done. It says DNA testing results. Now, if you don't have a good answer, that's fine, too. Well, I believe Mr. Rini's report, though, was about how the blood fell. I mean, I guess I'm not sure how the DNA testing was it. That's my question. Well, then maybe he cited the wrong informational summary. If counsel had investigated, what would that have shown anyway? I mean, how would that help your client in any way? If trial counsel had investigated, it could have greatly impeached Tabitha Hennis, shown that she had a violent temper and was of the control, the brains of the operation. Perhaps it would have undercut the premeditation. Are you suggesting that it was her blood or somebody else's? Oh, the blood. Yeah, the blood is what I'm trying to talk about. The blood, I don't recall. It wouldn't help your client, whatever came out of it, would it? I mean, if it's his blood. Unless it came out to be Tabitha's, for example, that would obviously help his case. But there was no testimony that she was cut or shot or anything there, right? Nor was any about him. To get to Judge Sutton, your question that you left off with, there have been several cases, including the Gonzalez dissent, which have said that you go to the underlying merits. And I think that's to prevent going to the underlying merits or reopening a case where the underlying merits of the claim to be reopened is just going to lose anyway, if that makes sense. So the reason, as part of the factors, you look at how strong is the claim is to say, well, if this was brought under the new change in law, then they'd win. Then they would have a different result. But if it weren't brought under, excuse me, if the merits of, for instance, Mr. Hennis' claim weren't good, that he would obviously lose on it, then reopening the case would be futile. Yeah, well, I hear what you're saying. I mean, it's a little dissatisfactory to me because it just seems to, like I said, it just lines up the merits of the claim. And instead of the rule being changes in law normally don't allow for 60 v. 6, it seems to me it flips the rule. Changes in law do allow for 60 v. 6 unless you would lose anyway, i.e. it's harmless. But it's not the only extraordinary circumstance to be examined. Also, in Gonzalez, they mentioned the settledness of the law that was overturned. Was this a law that was likely to be overturned anyway, and so you should have been more diligent in seeking appeal or cert? Or was this something that was well settled and then had been overturned surprisingly, something that you couldn't have expected, which is the case here with Coleman. I think after 20 years, if I may sum up. After 20 years, it had been steady law. It was unexpected. What about a rule that focuses on the test for when we apply things retroactively? That seems to overlap a little because that relates to change in law, of course. That's a high standard. And no other court has applied that standard. They have all gone by the several factors such as the Phelps test. Thank you. Counsel, let me ask you one final question on this Rini affidavit. These police informational summaries, is there an argument that that's Brady material or are these things that were in the defense file from the beginning? They had gotten them from the police. They're in the record. They're in the record. Okay. Thank you, counsel. Case will be submitted. Clerk may adjourn court.